**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

AMY C.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 3:25-cv-138

Newman, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff Amy C. filed this Social Security appeal to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents several claims of error, which the Defendant disputes. For the following reasons, the undersigned recommends that the Commissioner's decision be AFFIRMED.

### I. Summary of Administrative Record

On February 16, 2022, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. On the same date, Plaintiff also filed a Title XVI application for supplemental security income. In both applications Plaintiff alleged disability beginning on November 1, 2021. Plaintiff's claims were denied initially and on reconsideration.

On January 16, 2024, Plaintiff appeared with counsel and testified at a telephonic hearing before Administrative Law Judge ("ALJ") Joel Fina. A vocational expert also

[1]Because of significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

appeared and testified. On February 22, 2024, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled. The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

Plaintiff was born in 1980 and was 40 years old on the alleged disability onset date. (Tr. 26). The ALJ determined she has a limited education and had not engaged in substantial gainful activity since the onset date. (Tr. 19, 26).

Based on the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "mild degenerative joint disease of the foot; generalized anxiety disorder (GAD); depression; tobacco abuse; and allergic rhinitis." (Tr. 20). The ALJ also found that Plaintiff had received treatment for recurrent acute calculus of the kidney, but characterized that impairment as durationally nonsevere. The ALJ stated that he nevertheless considered all medically determinable impairments, including nonsevere impairments, in formulating the RFC. (Tr. 20). Considering Plaintiff's impairments individually and in combination, the ALJ determined that none met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*). The ALJ determined that, despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to

> lift up to twenty pounds occasionally, ten pounds frequently, stand or walk up to six hours per eight hour work day, and sit for at least 6 hours per 8 hour workday, with normal breaks. Claimant can occasionally climb ladders, ropes or scaffolds. Claimant can frequently climb ramps or stairs, balance. Claimant can occasionally stoop, crouch, kneel and crawl. Claimant must avoid concentrated exposure to extreme cold and heat. Claimant's work is limited to simple and routine tasks. Claimant cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. Claimant is limited to only occasional interaction with the public in the work setting. Claimant is limited to only occasional interaction with coworkers and supervisors that may be necessary for instruction, supervision or completion of work tasks.

(Tr. 22). Based on the RFC and testimony from the VE, the ALJ agreed that Plaintiff could not perform any past relevant work. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff could perform other jobs that exist in significant numbers in the national economy, including the representative occupations of housekeeping cleaner, marker, and mail clerk. The ALJ concluded that Plaintiff was not disabled from November 1, 2021 (the alleged onset date) through the date of the decision. (Tr. 27).

In formulating the RFC, the ALJ reviewed Plaintiff's subjective allegations of debilitating depression and anxiety, frequent crying spells, and panic attacks. The ALJ further noted Plaintiff's claim of ongoing painful kidney issues, multiple surgeries and infections, and back and sciatic pain. The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, Plaintiff's statements concerning their intensity, persistence, and limiting effects were not entirely consistent with the record. (Tr. 23).

In this regard, the ALJ noted that Plaintiff's depression and anxiety were managed with medication and, although she was tearful and anxious at times, her mental-status findings were generally normal. Plaintiff's consultative psychological evaluation documented a mildly anxious mood and constricted affect, but appropriate behavior, adequate short-term memory and satisfactory concentration and task persistence, unimpaired intellectual functioning, and only mild effects on stress tolerance. (Tr. 23-24). The ALJ acknowledged records of Plaintiff's back pain, spasms, and decreased range of motion, but found "minimal objective evidence indicating particular physical limitations" and noted that Plaintiff was observed ambulating normally and was found to have "good range of motion in all major joints, with no joint swelling, normal sensory function and no

focal deficits." (*Id*). The ALJ also found that Plaintiff's treatment was conservative, consisting mainly of medication management and stretching/yoga with no surgery recommended for her back pain or sciatica.

As discussed further below, the ALJ also considered the prior administrative medical findings and opinions in the record. State agency consultants Aracelis Rivera, PsyD and Courtney Zeune, PsyD, at the initial and reconsideration stages, found that Plaintiff had no limitations in adapting or managing oneself and moderate limitations in the remaining areas of mental functioning, including understanding, remembering or applying information; interacting with others; and concentrating, persisting, or maintaining pace. The consultants opined that Plaintiff was "able to understand, remember short repetitive tasks, in a setting with flexible pace and production requirements, but should avoid frequent interaction with the general public but can interact superficially with coworkers." (Tr. 25).[2] The ALJ found the medical findings persuasive as to Plaintiff's mental impairments, noting that they were consistent with the overall record and supported by the consultative examination findings. However, the ALJ was not persuaded by the state agency physicians' determination that Plaintiff's physical impairments were not severe. The ALJ found that the expanded record demonstrated severe impairments that resulted in functional limitations, as reflected in the physical limitations set forth in the RFC.

[2] The exact phrasing of the opinion above is from Dr. Zeune's review at the reconsideration level. As discussed below, Dr. Rivera made similar findings at the initial level, including moderate limitations in the same functional areas identified by Dr. Zeune and that Plaintiff could perform SRTs (simple routine tasks), may have some difficulty with concentration, persistence, or pace due to depression and anxiety, and should avoid contact with the general public. (Tr. 72-73).

Consultative examiner John S. Reece, PsyD opined that Plaintiff had deficits in dealing with stress and pressures in the workplace due to mental symptoms, as well as difficulty understanding and retaining oral instructions. The ALJ found the opinion "overall persuasive," noting that it was supported by Reece's objective findings on examination and consistent with the overall record. The ALJ specifically noted that Reece's findings and opinions were considered in limiting Plaintiff to simple routine tasks, with no specific production rate or hourly quotas. (Tr. 24-25).

Finally, the ALJ considered the opinion of Stephanie Beeching, CNP, who completed an impairment questionnaire and assessed both physical and mental limitations. Beeching opined that Plaintiff would be off task due to physical/psychological problems 25% or more in a typical work week, and absent more than four times per month. She further opined that Plaintiff could stand/sit for one hour at one time, work one hour per day, lift/carry 5 pounds occasionally and frequently and occasionally perform postural maneuvers. (Tr. 25). The ALJ was not persuaded by Beeching's opinion, finding it unsupported by the objective findings, that her treatment records did not reflect the assessed limitations, and the limitations were inconsistent with the overall medical evidence of record.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. § 1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial

gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 587 U.S. 92, 102-03 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of

Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that the claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Challenge to her RFC and the ALJ's Evaluation of the Prior Medical Findings and Opinion Evidence are without Merit.**

Plaintiff first contends that the ALJ erred in evaluating the opinions of Dr. Reece, the state-agency psychologists, and nurse Beeching. According to Plaintiff, the ALJ insufficiently explained her reasoning in evaluating the persuasiveness of the state-agency consultants and Dr. Reece, and improperly rejected the opinion of Beeching.

A claimant's RFC is an assessment of "the most a [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). An RFC assessment must be based on all the relevant evidence in the case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)– (5).

In rendering the RFC determination, the ALJ need not discuss every piece of evidence considered. *See Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing

*Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004)). However, the ALJ still has an obligation to consider all of the evidence before him and to meaningfully explain how the evidence supports each conclusion and limitation included in the RFC. *See Ryan v. Comm'r of Soc. Sec.*, 307 F. Supp. 3d 797, 803 (S.D. Ohio 2017), *report and recommendation adopted*, No. 3:16-CV-124, 2017 WL 3412107 (S.D. Ohio Aug. 8, 2017); Soc. Sec. R. 96-8p, 1996 WL 374184, *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence ...").

The Sixth Circuit has found that the administrative law judge's residual functional capacity finding does not need to correspond to a particular physician's opinion. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the argument that the administrative law judge is required to base her determination on a physician's opinion). As such, no bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019).

Thus, the role of the ALJ is to articulate how he considered medical opinions and how persuasive he found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). Under 20 C.F.R. § 404.1520c, an ALJ must evaluate the "persuasiveness" of each medical opinion, which requires the ALJ to explain how he considered the supportability and consistency of the opinion. Notably, the role of the Court is not to reweigh the evidence, but to make

sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.*, at *14.

In this case, Plaintiff claims that the ALJ improperly assessed the opinions of Dr. Reece, the state agency consultants, and Nurse Beeching. Upon review of the record, the undersigned finds no error.

First, as to Dr. Reece, Plaintiff claims that the ALJ failed to properly explain the consistency factor required by 20 C.F.R. § 404.1520c(b)(2). As noted above, Reece found that Plaintiff had deficits in dealing with workplace stress and some difficulty understanding and retaining oral instructions. The ALJ found Reece's opinion persuasive overall, noting it was supported by his objective findings on examination and "consistent with the overall record." (Tr. 24). Plaintiff argues that "the ALJ's mere assertion that Dr. Reece's opinion was 'consistent with the overall record'" inadequately explained the consistency evaluation and precludes meaningful review. (Doc. 13 at PageID 1764).

Although Plaintiff correctly notes that the ALJ did not identify supporting evidence in the same paragraph in which he found Dr. Reece's opinion consistent with the overall record, "it is well established that an ALJ may rely on information articulated elsewhere in his decision to support a persuasiveness finding and need not rearticulate such information in his analysis." *Thornsley v. Comm'r of Soc. Sec.*, No. 5:24-cv-1145, 2025 WL 1702944, at *16 (N.D. Ohio June 18, 2025) (citing *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016)). An ALJ need not "reproduce the list of [] treatment records a second time" when explaining consistency where the decision discusses that evidence elsewhere. *Crum*, 660 F. App'x at 457. Rather, the Court may consider the ALJ's decision as a whole to determine whether the factual findings elsewhere in the decision provide a basis for the persuasiveness determination. *See Deanna B. v. Comm'r of Soc.*

*Sec.*, No. 1:22-cv-604, 2024 WL 445391, at *5 (S.D. Ohio Feb. 6, 2024) ("The Sixth Circuit has held that meaningful judicial review exists—even if the ALJ provided only a cursory or sparse analysis—if the ALJ made sufficient factual findings elsewhere in the decision that supports his conclusion.").

Before discussing the opinion evidence, the ALJ evaluated the mental-health record as a whole. In doing so, the ALJ identified evidence corroborating Reece's stress-related findings as well as the limited degree of impairment he assessed. Specifically, the ALJ acknowledged Plaintiff's anxiety, depression, and panic-type symptoms, as well as her reported difficulty concentrating, handling stress and changes in routine. (Tr. 23-24). Those reports and treatment findings support the existence of some stress-related work limitation. The ALJ also noted that Plaintiff's mental-status findings were generally within normal limits; her conditions were managed with medication; she was reported to be "overall doing well" at a July 2022 follow-up appointment; and she retained the ability to drive, communicate regularly with her friend and mother, grocery shop when necessary, provide personal care, prepare simple meals, manage finances, and perform crafts at times. (Tr. 21, 23-24). This evidence is consistent with Dr. Reece's assessment that Plaintiff's mental symptoms had a mild effect in the area of stress tolerance, while also supporting the ALJ's conclusion that the symptoms did not preclude all work. The ALJ reasonably accommodated the limitations identified by Dr. Reece by restricting Plaintiff to simple, routine work without a specific production rate or hourly quotas.

The same analysis applies to the prior administrative findings of the state-agency psychological consultants. The consultants opined that Plaintiff was "able to understand, remember short repetitive tasks, in a setting with flexible pace and production requirements, but should avoid frequent interaction with the general public but can

interact superficially with coworkers." (Tr. 25). The ALJ found the state-agency prior administrative findings persuasive as to Plaintiff's mental impairments because they were "consistent with the overall medical evidence of record" and "supported by consultative examination findings." (*Id.*). Again, read in the context of the decision as a whole, the ALJ sufficiently evaluated and articulated the consistency of their findings.

In addition to the evidence noted above, the ALJ also reviewed the findings of Plaintiff's consultative examination, which included Plaintiff having a mildly anxious mood and constricted affect, but appropriate behavior and good eye contact; adequate short-term memory; satisfactory concentration and task persistence; good work knowledge and verbal-concept skills; good-to-fair abstract reasoning; and intact intellectual functioning and insight. (Tr. 23-24). In other words, the ALJ highlighted evidence consistent with the consultants' assessment of moderate mental limitations and their conclusion that Plaintiff could perform short, repetitive tasks with reduced pace and interpersonal demands. The ALJ sufficiently articulated the supportability and consistency of the state-agency psychological findings, and substantial evidence supports his decision.[3]

Finally, with respect to the opinion evidence, the ALJ adequately explained why he found nurse Beeching's opinion unpersuasive. Beeching opined that Plaintiff would be off task 25% or more in a typical work week and absent more than four times per month, due

---

[3] Plaintiff's separate argument under 20 C.F.R. § 404.1520c(b)(3) does not warrant remand. This provision applies only where the ALJ finds that two or more opinions on the same issue are both equally well-supported and equally consistent with the record, but are not exactly the same. As argued by Defendant, the ALJ did not make that predicate substantive finding here. *See. e.g.*, *Iriel v. Comm'r of Soc. Sec.*, No. 1:23-cv-311, 2023 WL 6350333, at *9 (W.D. Sept. 29, 2023) (rejecting a challenge under § 404.1520c(b)(3) where the ALJ did not find the opinions equally persuasive). Moreover, the consultants' assessments were materially compatible. Although Dr. Zeune provided a more detailed formulation concerning pace and coworker interaction, both consultants restricted Plaintiff to simple or repetitive work and reduced public contact. The ALJ found the prior administrative findings persuasive collectively and adopted corresponding limitations. The differing level of detail does not establish reversible error.

to physical and psychological problems. She further opined that Plaintiff could sit or stand for only one hour at a time, work only one hour per day, lift or carry no more than five pounds, and perform postural activities only occasionally. (Tr. 25). The ALJ did not find the opinion persuasive or supported by objective findings, noting that the assessed limitations were not reflected in Beeching's treatment records and were inconsistent with the overall medical evidence of record.

The undersigned finds no error in the ALJ's analysis. First, as discussed above, the mental-health evidence reasonably supports the ALJ's finding that Beeching's mental work limitations (including the combined off-task and absenteeism restrictions) were inconsistent with the record as a whole. The same evidence supporting the ALJ's finding that Reece's and the state-agency psychologists' opinions were persuasive—intermittent anxiety and tearfulness, but generally normal mental-status findings, symptoms managed through medication, and retained daily activities—also supports the ALJ's determination that Beechings' assessment of Plaintiff's mental limitations was inconsistent with the record and not supported.

Substantial evidence also supports the ALJ's determination that Beeching's assessed physical restrictions were not supported by her treatment notes or consistent with the medical evidence. The ALJ acknowledged records noting Plaintiff's back pain, spasms, tenderness, and reduced range of motion. However, he also observed that Plaintiff ambulated normally; received minimal treatment recommendations for her back symptoms aside from stretching and yoga; had not been recommended for back surgery; took Tylenol for pain; and demonstrated good range of motion in all major joints, no joint swelling, normal sensory function, and no focal deficits. (Tr. 24). And although Plaintiff points to objective findings in support of Beeching's opinions (*see* Doc. 8 at PageID 1735-

36), it is the sole responsibility of the ALJ to evaluate the evidence in the record and determine the RFC. *See* 20 C.F.R. § 416.946; *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). *See also Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994) (noting it is the ALJs job to resolve conflicts in the evidence and such "findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion").

In this case, the ALJ did not wholly reject Plaintiff's physical and psychological symptoms. The ALJ instead reasonably evaluated the entire record, assessed the persuasiveness of the prior medical findings and medical opinions, and accounted for Plaintiff's limitations in the RFC. Accordingly, Plaintiff has not shown that the ALJ erred in evaluating the findings of Dr. Reece, the state-agency psychologists, or nurse Beeching.

**C. The ALJ Adequately Considered Plaintiff's Kidney and Low-Back impairments.**

Next, Plaintiff argues that the ALJ improperly considered evidence concerning her kidney and low-back impairments. Specifically, Plaintiff contends that the ALJ's finding that her recurrent acute calculus of the kidney was "durationally non-severe" was incompatible with records documenting kidney stones, imaging, hospital and emergency-department visits, infections, and multiple procedures throughout the relevant period. (Doc. 8 at PageID 1736-38). Plaintiff similarly argues that her back impairment is also documented throughout the record. (*Id.* at PageID 1738). Plaintiff maintains that the ALJ failed to meaningfully evaluate the functional effects of those impairments on her ability to work.

Even assuming that the ALJ erred by characterizing Plaintiff's kidney impairment as non-severe, Plaintiff has not shown reversible error. At step two, the ALJ found several severe impairments, including mild degenerative joint disease of the foot; generalized

anxiety disorder; depression; tobacco abuse; and allergic rhinitis. (Tr. 20). The ALJ expressly found Plaintiff's recurrent acute kidney calculus to be durationally non-severe. Although the ALJ did not separately identify a low-back impairment as severe, he discussed Plaintiff's allegations of back and sciatic pain and considered those complaints in assessing the RFC. (Tr. 23-25).

An error at step two does not require reversal where the ALJ finds at least one severe impairment and proceeds through the remaining steps of the sequential evaluation, so long as the ALJ considers the limiting effects of all medically determinable impairments in formulating the RFC. *Maziarz v. Secretary of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. § 404.1545(a)(2). In this case, the ALJ expressly considered all of Plaintiff's medically determinable impairments "including those that are not severe" in formulating the RFC. (Tr. 20). The ALJ further stated that the exertional and postural restrictions included in the RFC accounted in part for Plaintiff's complaints of "back and kidney pain." (Tr. 25).

Plaintiff's claim that the ALJ otherwise failed to properly assess the functional limitations resulting from the impairments is without merit. With respect to the lower-back impairment, her position is unavailing for substantially the same reasons discussed in connection with nurse Beeching's opinion evidence. As discussed above, the ALJ acknowledged records documenting back spasm, pain, and decreased range of motion. The ALJ permissibly weighed this evidence against Plaintiff's normal ambulation, conservative treatment recommendations, and January 2024 findings of good range of motion in all major joints, no joint swelling, normal sensory function, and no focal deficits. (Tr. 24). The ALJ similarly acknowledged Plaintiff's treatment for recurrent acute calculus of the kidney and her testimony regarding painful kidney issues, related treatment,

surgeries, and hospitalizations. (Tr. 20, 23). The ALJ considered Plaintiff's kidney and lower-back limitations in formulating Plaintiff's RFC and accommodated the physical symptoms he found supported by the record. (Tr. 25-26). Apart from Beeching's opinion—which the ALJ reasonably found unpersuasive—Plaintiff has not identified evidence establishing that her kidney and lower-back impairments imposed functional limitations greater than those reflected in the RFC.[4]

Accordingly, Plaintiff has not shown that the ALJ's step-two finding or RFC assessment requires remand.

**D. The ALJ did not Fail to Develop the Record.**

Finally, Plaintiff contends that the ALJ failed to fully and fairly develop the record with respect to her physical impairments. (Doc. 8 at PageID 1740). According to Plaintiff, because the ALJ found the state-agency prior administrative medical findings unpersuasive insofar as they found no severe physical impairment, and also found nurse Beeching's opinion unpersuasive, the ALJ was left without a medical opinion supporting the physical RFC and should have further developed the record.

The undersigned finds no error. It is well-established that a claimant bears the burden of producing evidence that demonstrates her entitlement to disability benefits. *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson,* 441 F.2d 1230 (6th Cir. 1971)). As such, the "burden of providing a complete record, defined as evidence complete and detailed enough to enable the

---

[4] Plaintiff contends that the ALJ's statement that she was not prescribed medication for kidney pain was inaccurate, citing records reflecting prescribed or administered ibuprofen, oxycodone, and pain medication. (Doc. 8 at PageID1737 n.9). Even assuming that the ALJ's statement was incomplete or inaccurate, Plaintiff has not shown that correcting the statement would require additional RFC restrictions or alter the nondisability determination.

[Commissioner] to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (internal citation omitted). An ALJ is not required to further develop the record if there is sufficient evidence in the record to evaluate the disability claim. *See Hizer v. Comm'r of Soc. Sec*., 852 F. App'x 999, 1003 (6th Cir. 2021) (no duty to develop the record where the claimant was represented by counsel and the record was not deficient).

If the ALJ supports his RFC with a "combination of objective medical evidence and non-medical evidence," decisions are upheld "even where there is no medical opinion that corresponds precisely to the RFC found by the ALJ." See *Naddra v. Comm'r of Soc. Sec.,* No. 1:16-CV-340, 2016 WL 11268204, at *8 (S.D. Ohio Dec. 22, 2016) (Bowman, M.J.) (collecting cases), report and recommendation adopted, No. 1:16-CV-340, 2017 WL 1194708 (S.D. Ohio Mar. 31, 2017) (Barrett, D.J.). In other words, the foundation of the ALJ's RFC does not have to be a physician's medical opinion, so long as the ALJ sufficiently "make[s] a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc.* Sec., 775 F. App'x 220, 226 (6th Cir. 2019) (citing *Rudd v. Comm'r of Soc. Sec*., 531 F. App'x 719, 728 (6th Cir. 2013)).

The ALJ did so here. Based on review of the entire record, the ALJ found that the state-agency physicians did not account for the expanded record demonstrating physical impairments and resulting limitations. (Tr. 25). Conversely, as discussed above, substantial evidence supports the ALJ's finding that Beeching's highly restrictive assessment—that Plaintiff could only work one hour daily, would be off task at least 25 percent of the work week, and miss more than four days monthly—was unsupported by her treatment records and inconsistent with the record as a whole. (*Id.*). As a result, the ALJ assessed a restricted light RFC accounting for the physical limitations he found

established by the record. Plaintiff fails to show that the record was inadequate for the ALJ to make a decision regarding disability or that the ALJ abused his discretion in not further developing the record. The ALJ evaluated the record and adequately explained the reasoning in assessing Plaintiff's physical limitations. Because the decision is supported by substantial evidence, the decision should be affirmed.

**III. Conclusion and Recommendation**

Because the Commissioner's decision reflects no reversible error and is supported by substantial evidence, **IT IS RECOMMENDED THAT** the decision be **AFFIRMED** and that this case be **CLOSED**.

*s/Stephanie K. Bowman* _
Stephanie K. Bowman
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

AMY C.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 3:25-cv-138

Newman, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).